Morris v. Morris.

ANN E. MORRIS and others vs. ISAAC P. MORRIS.

It is only when a minor has no other means for his education and maintenance that the Orphans Court is empowered by the statute to order the sale of his lands.

Where the parent is of sufficient ability to maintain and educate the infant, as a general rule, the lands of the latter should not be sold for that purpose.

There may be such a disparity between the fortune of the minor and the pecuniary circumstances of the father as would make it proper that the fortune of the child should contribute to his own support.

The principle which should govern the court in making the order should be the same as has been adopted in chancery in like cases.

*H. V. Speer*, for appellants.

*A. V. Schenck*, for respondents.

THE ORDINARY. Ann E. Morris, Mary J. Morris, and George P. Morris are minors under the age of fourteen years. They are seized of about thirty acres of land in the county of Middlesex, valued at one thousand dollars. Their father, Isaac P. Morris, was appointed their guardian by the Orphans Court of the county of Middlesex. He presented a petition to that court, representing that the personal estate and rents and profits of the said real estate were not sufficient for the maintenance and education of the infants, and praying for an order of the court authorizing him to sell the whole of the said tract of land for those purposes. In the investigation before the court, it was admitted, and the admission received as part of the evidence, that the father was seized of

considerable land in the county, and was abundantly able to maintain and educate his children. The court made an order for the sale of the lands, in which order they recited that they had examined the inventory of the estate of the said infants theretofore filed by the said guardian, and had made a full investigation of the situation and produce thereof, and of the state and circumstances of the said infants, and judged it necessary for their maintenance and support to make the order. The appeal is from this order.

By the 6th section of the act respecting " guardians," (*Nix. Dig.* 317) it is enacted, " If the personal estate and rents and profits of the real estate be not sufficient for the maintenance and education of the ward, the Orphans Court of the proper county, on full investigation thereof, may, from time to time, order the guardian to sell so much of the timber growing or being upon the lands of said ward, or such parts of the ward's lands, tenements, hereditaments, and real estate as they shall direct and judge adequate for his or her maintenance and education." By the 10th section of the same act, it is enacted, " If any minor or minors shall become seized or possessed of, or entitled to any real or personal estate in the lifetime of the father of such minor or minors, it shall and may be lawful for the Ordinary, or for the Orphans Court of the county where such minor or minors reside, or such real or personal estate may be, to appoint the father, or other suitable person or persons, guardian or guardians of the estate of such minor or minors."

The provisions contained in the 6th section of the act are of long standing, and were contained in the original acts of the legislature giving jurisdiction to the Orphans Court as to the appointment of guardians and the sale of infants' lands. The provisions of the 10th section are of recent origin, and were probably incorporated into the act in consequence of the decision in the case of *Garrabrant* v. *Sigler*, in April term, 1829, when the Ordinary decided that the Orphans Court had no power to appoint a guardian for a minor during the lifetime of the father; the Prerogative Court had no such

power, nor could the consent of the father confer such jurisdiction.

Previous to the provisions contained in the 10th section, the Orphans Court had no power to order the sale of land of an infant who had a father living. The court could only order such sale upon the application of a guardian appointed by the court. The court having no power to appoint a guardian of an infant who had a father living, it followed that they possessed no power to make such an order. It was to meet this exigency that power was conferred upon the court to appoint the father, or other suitable person, guardian of the estate of such minor. Prior to this power being conferred, the only mode by which the estate of a minor so circumstanced could be appropriated to his maintenance and education was by an application to the Court of Chancery, which, by virtue of its general jurisdiction over minors and their estates, frequently exercised this power. The jurisdiction of the Court of Chancery is not at all diminished or limited by the act of the legislature referred to.

The power conferred upon the Orphans Court was to enable that court to order the sale of the land of a minor where that minor had no other means for his education and maintenance. Although the language of the act is, " if the personal estate and rents and profits of the real estate be not sufficient," it was never the intention of the act that where the infant was abundantly provided *from other resources* for his maintenance and education other than his own personal and real estate, yet because his own real and personal estate were not sufficient for the purpose, the court might order a sale of his real estate. It would be a perversion of the wise provisions of the act to exercise the power in such a case. Suppose a minor seized of real estate, the rents and profits not being sufficient for the objects contemplated by the act, and possessed of no personal estate, but abundantly supplied by wealthy relatives with ample means for support and education, there could be no propriety in ordering his lands converted into money for purposes for which money was not

Morris *v.* Morris.

wanted.    It would be a wanton sacrifice of the minor's property, under such circumstances, to order a sale of his lands. It would be using the salutary provisions of the act to the great injury, instead of the benefit of the minor.

In this case it appeared to the court that the parent who, as the guárdian, applied for the order was abundantly able to maintain and educate the minors.    There was no dispute upon this point.    Why, then, should the court make an order to sell the real estate of the minors?    The parent was under a moral obligation to maintain and educate his children. The minors had then means other than this real estate to supply their wants, and there was therefore no propriety in making the order in this case.

I do not mean to lay down the principle, that the Orphans Court would not be justified, in any case where the father has the means of educating and maintaining his minor children, to grant an order upon the application of the father, as guardian, to sell the lands of the minor.    All I mean to say is, that there should appear to the court some good reason why the father should not appropriate his own fortune and means to maintain and educate his children.    There may be such a disparity between the fortune of the minor and the pecuniary circumstances of the father as would make it proper that the fortune of the child should contribute to his own support.    The principle which should govern the court in making the order should be the same as has been adopted in chancery upon like applications.    *Jackson* v. *Jackson,* 1 *Atk.* 513, 514; *Fawkner* v. *Fawkner,* 1 *Atk.* 405; *Collier* v. *Collier,* 3 *Ves.* 33; *Butler* v. *Butler,* 3 *Atk.* 408; *Andrews* v. *Partington,* 3 *Brown's Ch. Cas.* 60; *Roach* v. *Gawan,* 1 *Ves.* 158; 33 *Car.;* 11 *Vent.* 353, *Anon.;* *Billingsby* v. *Cretcher,* 1 *Brown's Ch. Rep.* 269; *Lady Shaftsbury's case, Prec. in Ch.* 558; *Chaplin* v. *Chaplin,* 1 *P. W.* 365; *Shaw* v. *Shaw,* 9 *Ves.* 288; *Hill* v. *Chapman,* 3 *Brown's Ch. Cas.* 231; *Wilkes and Wife* v. *Rogers and others,* 6 *Johns. Rep.* 571, and cases cited.